**588**

Betty J. JAMES and Raymond Miller, on
their own behalf and on behalf of those
similarly situated, Plaintiffs,

v.

Walter HEADLEY, Chief of Police of the
City of Miami, Defendant.

Civ. No. 67–1237.

United States District Court
S. D. Florida.

Feb. 5, 1968.

Bruce S. Rogow, Howard W. Dixon, Alfred Feinberg, Miami, Fla., for plaintiffs.

Alan H. Rothstein, City Atty., Charles K. Allan, Asst. City Atty., Miami, Fla., for defendant.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

MEHRTENS, District Judge.

Betty J. James and Raymond Miller filed a complaint as a purported class action on behalf of themselves and all persons charged with any misdemeanor, praying for the setting aside of sentences imposed upon them by the Miami Municipal Court and for injunctive relief against the Municipal Court and other city officials.

This Court entered an order on December 28, 1967, holding that the petitioners were not entitled to injunctive or equitable relief and that their only remedy was under the Federal Habeas Corpus provisions for a deprivation of their federal constitutional rights. The Court consequently dismissed all defendants except Walter Headley, the Miami Chief of Police, and has treated the complaint as a petition for writ of habeas corpus.

The petitioner Betty J. James was charged in the City of Miami Municipal Court with five separate offenses, as follows: (1) petty larceny, Case No. 67–19983; (2) resisting arrest, Case No. 67–19984; (3) assault and battery upon a police officer, Case No. 67–19992; (4) assault and battery upon another police officer, Case No. 67–19993; and (5) assault and battery upon still another police officer, Case No. 67–19994. She was arraigned, tried, and convicted in each of the cases. Upon conviction, she was sentenced in each of the cases to be imprisoned in the city jail for a term of

60 days, to pay a fine of $500, and in default of such payment to be committed to the city jail for an additional term of 60 days.

The petitioner Raymond Miller was charged in the same court with two separate offenses: (1) petty larceny, Case No. 67–19980; and (2) resisting arrest, Case No. 67–19981. In each of these cases he was likewise arraigned, tried, and found guilty. In each case he was sentenced for a term of 60 days, to a fine of $500, and in default of such payment to be committed in the city jail for an additional term of 60 days.

Both petitioners received maximum sentences under the Charter of the City of Miami which provides that the Municipal Court may impose a "fine not exceeding $500 or imprisonment at hard labor on the streets or other works of the City for a term not exceeding 60 days, or both." Section 3(aa).

From testimony adduced at a hearing pursuant to 28 U.S.C. § 2243 it developed that the petitioners had moved the trial court for modification of their sentences, which motions were granted. Each sentence was modified to eliminate the fine of $500 and the commitment for 60 days in default of payment thereof, leaving each petitioner sentenced to a term of 60 days for each offense, sentences to run consecutively, making a total of 300 days confinement for Betty J. James on her five offenses, and 120 days for Raymond Miller on his two offenses. Such modification resolved this Court's concern that the sentences as originally imposed may have been partially invalid in view of the holding of the Florida Supreme Court in Lyle v. Walter, 100 Fla. 1457, 131 So. 383 (1930), and made moot questions raised by the petitioners as to the constitutionality of assessing jail sentences in lieu of payment of fines.

■ The petitioners attack the validity of their confinement on the ground that they were denied a right to appointed counsel at their trials. They have failed to present that issue to the Florida state courts. Recent decisions of the Florida Supreme Court, however, reveal that it would be futile to attempt to exhaust available state remedies. See State ex rel. Taylor v. Warden of Orange County Prison Farm, 193 So.2d 606 (Fla.1967); Watkins v. Morris, 179 So.2d 348 (Fla. 1965); Fish v. State, 159 So.2d 866 (Fla. 1964). Under the circumstances, failure to exhaust such remedies is not a bar to federal relief. McDonald v. Moore, 353 F.2d 106 (5th Cir. 1965); Reed v. Beto, 343 F.2d 723 (5th Cir. 1965).

There is a conflict in the evidence regarding whether or not the petitioners, who were and still are indigent, were advised of a right to appointed counsel. Both petitioners understandably assert that they received no such advice and that they did not knowingly and intelligently waive appointment of counsel.

On behalf of the respondent the trial judge testified that, because of previous federal court rulings, his policy was to advise defendants of a right to aid of an attorney without cost but that he did not remember the circumstances of these particular cases because he tries hundreds of cases a year. The prosecuting attorney testified that because of the nature of the charges he remembered the particular cases; that the trial judge started to instruct the petitioners regarding the appointment of attorneys for indigent persons, but that before he could complete his advice the petitioner Betty J. James, in the presence of Raymond Miller, interrupted him, stating that they knew their rights; that they were innocent and did not need any attorney; and that petitioner Miller also stated that he did not wish an attorney. On the basis of the evidence, the Court would be inclined to find factually that the petitioners were advised of their alleged rights and intelligently waived counsel. The Court, however, is further of the opinion that this matter should be disposed of upon the ground that the right to appointed counsel does not extend to the circumstances of this case.

The petitioners' counsel argues (a) that the Sixth Amendment, as applicable

to the states through the Fourteenth Amendment, requires every indigent defendant to have appointed counsel in every misdemeanor case no matter how trivial the charge; and (b) that even assuming that the right to appointed counsel attaches only to "serious offenses," their several individual cases, each of which involves less than six months possible confinement, should be considered together as involving "serious offenses" because then the *aggregate* maximum possible sentence exceeded six months.

The Court does not find merit in either contention.

With regard to the alleged right of court-appointed counsel in any misdemeanor case, this Court, in Brinson v. State of Florida, 273 F.Supp. 840 (1967), held in substance that persons charged with misdemeanors which would be classified as petty offenses under Title 18, United States Code, Section 1, are not entitled to court-appointed counsel, but that persons charged with misdemeanors punishable by imprisonment for more than six months were charged with offenses of sufficient seriousness to be considered as defendants in "criminal prosecutions" within the meaning of the Sixth Amendment and therefore entitled to court-appointed counsel.

In addition to the reasons and authorities set out in *Brinson,* an additional predicate for the Court's conclusion is found in Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), wherein the Supreme Court pointed out that over 75 years ago in Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223, that court, in discussing criminal actions falling within the requirements of the Sixth Amendment of the Constitution, stated that:

" ' * * * in that class or grade of offences called petty offences, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose,' a jury trial is not required. And as late as 1937 the Court reiter-

ated in District of Columbia v. Clawans, 300 U.S. 617, 624, 57 S.Ct. 660, 81 L.Ed. 843, that: 'It is settled by the decisions of this Court * * * that the right of trial by jury * * * does not extend to every criminal proceeding. At the time of the adoption of the Constitution there were numerous offenses, commonly described as "petty," which were tried summarily without a jury. * * *' See also Natal v. State of Louisiana, 139 U.S. 621, 11 S.Ct. 636, 35 L.Ed. 288 (1891); Lawton v. Steele, 152 U.S. 133, 141–142, 14 S.Ct. 499, 38 L.Ed. 385 (1894); Schick v. United States, 195 U.S. 65, 68–72, 24 S.Ct. 826, 49 L.Ed. 99 (1904); District of Columbia v. Colts, 282 U.S. 63, 72–73, 51 S.Ct. 52, 75 L.Ed. 177 (1930). * * *"

■ The constitutional right to counsel applies only to "criminal prosecutions" just as the right to jury trial does. Inasmuch as the Supreme Court has concluded that a prosecution for a "petty offense" does not constitute a "criminal prosecution" within the purview of the Sixth Amendment so as to preclude the petitioners from having a jury trial as a matter of right in the Municipal Court, the only logical conclusion is that they likewise were not entitled to be represented by appointed counsel.

With regard to the second contention, there seems to be no basis in reason or justice whereby any person merely by committing a series of misdemeanors, each entailing a separate charge, arraignment, trial and sentence, could create a unique constitutional right for himself by cumulating the total of the punishments possible for his several wrongdoings. Under this Court's holding a person charged merely with overparking or some other trivial offense would not be entitled to court-appointed counsel. A person who has overparked 50 or 100 times, each time ignoring the warrant and not appearing in court, when finally apprehended, cannot acquire a constitutional right he otherwise would not have by virtue of his multiple violations of the

law, thereby placing a premium upon law breaking.

For the reasons expressed herein and in the *Brinson* case the Court holds that the petitioners, being charged with offenses coming within the federal definition of "petty offenses," had no constitutional right to be advised that they were entitled to be represented by a court-appointed attorney without cost if they were indigent.

It is therefore

Ordered, adjudged and decreed that the petition for writ of habeas corpus is denied; and it is further

Ordered, adjudged and decreed that this cause be and the same hereby is dismissed.